W. F. VANDERBURGH, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, January 18, 1910.

1. **RAILROADS: Fires: Evidence: Sufficiency of: Facts Stated.** In an action against a railroad company for damages to a building and its contents, alleged to have been caused by fire set out by one of its locomotives, evidence that the building, which was sixty feet from the railroad track, was discovered on fire about eight minutes after a heavily loaded freight train had passed; that the top of the building, where the fire caught, was covered with lint of a highly inflammable nature; that the engine, as it passed, was discharging a shower of

sparks, which fell on nearby roofs, and the wind was blowing the smoke directly over the building in question, and was blowing hard enough to carry sparks and cinders over it, together with lack of proof of any other source from which the fire could have caught, is sufficient to warrant the submission to the jury of the question whether or not defendant's locomotive set out the fire.

2. **APPELLATE PRACTICE: Award of Damages: Excluded Item Presumptively not Included.** Where evidence regarding an item of damages was offered and excluded, it will not be presumed the jury took it into consideration in assessing the damages.

Appeal from Dunklin Circuit Court.—*Hon. Jas. L. Fort,* Judge.

AFFIRMED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1) The evidence on the part of plaintiff was not sufficient to submit the case to the jury on the question of the origin of the fire, and the defendant's demurrer to the evidence should have been sustained. Peck v. Railroad, 31 Mo. App. 123; Sheldon v. Railroad, 29 Barb. 226; Peffer v. Railroad, 98 Mo. App. 291; Bates Co. Bank v. Railroad, 98 Mo. App. 330; Glick v. Railroad, 57 Mo. App. 97; Torpey v. Railroad, 64 Mo. App. 382; Giggs v. Railroad, 104 Mo. App. 276; Campbell v. Railroad, 121 Mo. 349; Manning v. Railroad, 119 S. W. 464; Moore v. Railroad, 28 Mo. App. 622. There was no testimony that sparks or cinders were thrown from the engine a distance sufficient to reach the cotton gin, from which the fire communicated to plaintiff's property; nor that such sparks contained heat enough to ignite said cotton gin. This must be shown, because the jury cannot take judicial cognizance of the fact that sparks and cinders emitted from a locomotive may be borne a given distance by the wind. Campbell v. Railroad, 121 Mo. 349; Gibbs v. Railroad, 104

Mo. App. 286; Manning v. Railroad, 119 S. W. 464; Sheldon v. Railroad, 14 N. Y. 223. (2) The court erred in giving plaintiff's second instruction. Campbell v. Railroad, 121 Mo. 340; Gibbs v. Railroad, 104 Mo. App. 276; Manning v. Railroad, 119 S. W. 464. (3) The verdict of the jury is excessive and is against the evidence. 14 Ency. Pl. and Pr., p. 762, sub-div. G·; Miller v. Brown, 82 Ia. 79; Beckwith v. Boyce, 12 Mo. 440; Logan v. Small, 43 Mo. 254; Higgs v. Hunt, 75 Mo. 106; Burdict v. Railroad, 123 Mo. 253.

*E. F. Sharp* and *Russell & Dean* for respondent.

(1) The testimony in this case warranted its submission to the jury, and their finding is conclusive and should not be disturbed. Kenney v. Railroad, 70 Mo. 243; Torpey v. Railroad, 64 Mo. App. 382; Tapley v. Railroad, 129 Mo. App. 88; Wright v. Railroad, 107 Mo. App. 209; Fields v. Railroad, 113 Mo. App. 642. (2) In this case there was such "known and experienced connection between the collateral facts or circumstances satisfactorily proved and the fact in controversy" as to justify the submission of the case to the judgment of the jury. Kenney v. Railroad, 70 Mo. 243; Peck v. Railroad, 31 Mo. App. 127.

GOODE, J.—Plaintiff sued for the value of property said to have been consumed in a fire set by one of defendant's locomotives. The property was an iron-hoop mill building, machinery, hoops and supplies in it, in the town of Marston, New Madrid county. The mill building was adjacent to a building used as a cotton gin and also one used as a planing mill, all the buildings being under one roof. There is no doubt the property was destroyed by a fire which burst out about one o'clock, November 12, 1906; but defendant contends the evidence was not sufficient to carry the issue to the jury of whether the fire was set by a passing locomotive.

The conflagration started in the cotton gin and was discovered in a few minutes, say eight, after a heavily loaded freight train of fifty-four cars had passed. The day was Monday, the plant had not been in operation since the preceding Friday, and there was no fire in or about it unless some of the employees had been smoking cigarettes. There was a rather unsuccessful attempt to prove they had been. Running alongside the cotton gin were what are known as ventilators which opened into the gin house proper and communicated with ventilators extending above the roof, through which cotton lint was discharged into the air. The coverings of the ventilators which projected above the roof were eight or ten inches above the tops of the pipes, the latter being two feet across and communicating with the interior of the building. The edges and sides of them and the entire roof, were covered with cotton lint, a combustible material and easily ignited. The buildings were about sixty feet from the main line of defendant's track and the ventilators in the roof perhaps ten feet further. As the freight train passed it was going around a curve, laboring heavily, the fireman was feeding fuel into the fire box as the locomotive passed the gin house, and a shower of sparks was being discharged from the engine flue and falling about the depot platform, which was some two or three hundred feet away from the gin house, about the hoop shed, an appurtenance to the hoop mill, but a little further south along the track, and generally about the west side of the track. A witness who was standing by the hoop shed, stepped under it to escape the fall of sparks and cinders. Water was poured on the tops of the sheds to keep them from igniting from the cinders. The smoke was blowing directly over the gin house. A witness said the wind blew hard enough to blow sparks and cinders over the sheds. Considering the highly inflammable nature of the flaky lint covering the inside and outside of the gin ventilators, the sparks and cinders being thrown off by the engine, and the dis-

tance the evidence shows they were blown by the wind, the direction of the wind, the almost instantaneous discovery of the fire after the train had passed, the lack of proof of any other source from which it could have caught, the proximity of the buildings to the track, and the fact that cinders fell on the nearby roofs, we hold it was for the jury to determine whether the gin took fire from a cinder or spark emitted by the locomotive, and the hoop mill which was connected with the gin, shared in the conflagration.

The only other complaint made is that the jury assessed damages for freight charges paid by plaintiff on certain consumed articles of personal property. The jury found the verdict for the full amount demanded, $1586.-23. Nothing was said in the petition about freight charges, but during the trial plaintiff offered to prove the amount paid for freight on the property when it was shipped to the factory, to-wit, $79.84. This evidence was excluded. The jury were not authorized by the instructions to give any damages for freight charges on the burned property, but were directed to allow plaintiff its reasonable value, if they found the fire had been set by one of defendant's engines; and in ascertaining the value, to take into consideration the condition of the building, machinery, other property burnt, length of time it had been in use, its repair, together with all other facts and circumstances in evidence tending to show its value. No evidence regarding the freight paid was before the jury and hence it is not to be presumed the jury took that item into consideration in assessing the damages.

The judgment is affirmed. All concur.