**Reversed in Part and Remanded and Opinion filed June 12, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-01017-CV

---

## LAKES OF ROSEHILL HOMEOWNERS ASSOCIATION, INC., Appellant

## V.

## DAVID BRUCE JONES, GREGORY KASPAR, PATRICIA KASPAR, WENDELL BUDISALOVICH, ALICIA R. VYKOUKAL, DAVID W. VYKOUKAL, MARK J. WOJCIK, JOHN KELLY DICKSON, CORA NADINE DICKSON, RONNIE J. MONTGOMERY AND MARY J. MONTGOMERY, Appellees

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-16762**

---

## O P I N I O N

This is a suit by the Lakes of Rosehill Homeowners Association, Inc. against multiple defendants to recover for property damage allegedly caused by flooding. The Association filed a petition for permission to appeal the trial court's orders granting partial summary judgment for defendants on the Association's common-

law tort claims.[1] *See* Tex. Civ. Prac. & Rem. Code § 51.014(f); Tex. R. App. P. 28.3. We granted the Association's petition to address a controlling question of law identified by the trial court.

The question before us is whether the rule of joint and several liability in tort among defendants whose individual share of responsibility for a plaintiff's injuries cannot be proven survives the State's adoption of proportionate responsibility, now codified in Chapter 33 of the Texas Civil Practice and Remedies Code. We conclude that the rule of joint and several liability, as recognized in *Landers v. East Texas Salt Water Disposal Co.*, 248 S.W.2d 731, 734 (Tex. 1952), does survive. Accordingly, we reverse the trial court's summary judgment orders in part and remand for further proceedings.

## BACKGROUND

The Association serves homeowners in the Lakes of Rosehill subdivision (the Rosehill Subdivision). The Association owns and maintains reserve tract G, which contains a drainage channel constructed exclusively to convey storm-water runoff from the Rosehill Subdivision.

To the east of the Rosehill Subdivision is the Cypress Fields Subdivision (the Cypress Subdivision). Surface water from the Cypress Subdivision is drained through roadside ditches to two primary drainage ditches along the east and west property lines. The drainage ditch along the west property line of the Cypress

---

[1] These orders include: (1) Order on Defendants Gregory Kaspar and Patricia Kaspar's First Amended Motion for Summary Judgment signed on October 13, 2016, (2) Order on Defendants Mark J. Wojcik, David Vykoukal, Alicia Vykoukal, Ronnie Montgomery, and Mary Montgomery's No-Evidence Motion for Summary Judgment signed on October 13, 2016, (3) Order on Defendants John Kelly Dickson and Cora Dickson's Motion for Summary Judgment signed on November 21, 2016, (4) Order on Defendant David Bruce Jones' Motion for Summary Judgment signed on November 29, 2016, and (5) Order on Defendant Wendell Budisalovich's Motion for Summary Judgment signed on November 29, 2016.

2

Subdivision (the West Ditch), which borders the Association's reserve tract, is located within a 30-foot drainage easement that includes portions of each of the defendants' properties.

The Association alleges that portions of the West Ditch owned by defendants contain blockages and obstructions such as overgrown vegetation, rocks, fences, and structures, and that other portions have been intentionally modified by the addition of fill, or compromised, modified, or not maintained. As a result, those portions of the West Ditch are not as wide or deep as shown on the original construction plans for the ditch. The Association alleges that these deviations from the original construction plans reduced flow capacity in the West Ditch, which caused surface water to overflow from the West Ditch onto the Association's reserve tract. According to the Association, this overflow and seepage from the West Ditch caused erosion, sinkholes, washout, and other damage to its reserve tract.

On March 27, 2014, the Association sued defendants for common-law nuisance, negligence, and trespass to land, as well as violations of the Texas Water Code and statutory public nuisance under section 343.011(c)(11) of the Texas Health and Safety Code. The Association seeks damages for past repair costs, injunctive relief to compel the defendants to maintain the West Ditch, and attorney's fees. The Association alleges that defendants are jointly and severally liable for its injury because they failed to exercise ordinary care to maintain those portions of the West Ditch on their properties, which resulted in an indivisible injury because defendants' individual responsibility for the injury cannot be apportioned with reasonable certainty.

In September and October 2016, defendants filed identical no-evidence and traditional motions for summary judgment. The trial court signed orders granting no-evidence summary judgment in part for each defendant. The court first ruled on

3

the First Amended Motion for Summary Judgment filed by defendants Gregory and Patricia Kaspar, granting them partial no-evidence summary judgment against the Association's common-law tort claims for nuisance, negligence, and trespass (the Kaspar Order). In its Kaspar Order, the trial court "assumes for the purposes of this motion that the ditch in question has not been maintained, and that such failure has caused flooding of Plaintiff's property. There are material and disputed issues of fact as to these matters." The court denied the no-evidence motion for summary judgment as to causation.

Regarding the common-law tort claims, the trial court concluded "[t]here is no such thing as joint and several liability for negligence or trespass in light of CPRC 33.001, et seq. There is no evidence as to the Kaspar[s'] share of the tort liability for the damages claimed under any of these theories, so the Plaintiff could never support an allocation of liability."[2] The court therefore granted summary judgment "as to common[-]law nuisance, negligence and trespass on no-evidence grounds. The Plaintiff[] ha[s] no evidence of the Kaspar[s'] specific proportion of the liability, so under no circumstances could tort damages be awarded." The trial court's orders granting partial summary judgment for the remaining defendants adopted the same rulings and reasoning.

The trial court later granted the Association permission to appeal its orders, stating the controlling question of law as "whether the concept of joint and several liability for negligence or trespass among defendants whose individual share of causation cannot be proven by Plaintiffs survives the State's move to proportional fault as expressed in CPRC 33.001 et seq." The Association then filed a petition for permission to appeal with this Court, which we granted. *See* Tex. R. App. P. 28.3.

---

[2] The trial court explained that it was treating the Association's nuisance claim as a type of negligence claim.

ANALYSIS

**I. We limit our review to the controlling question the trial court identified.**

In addition to the controlling question the trial court identified, the parties' appellate briefs address several other questions, many of which were raised below. We therefore begin by considering the scope of this permissive interlocutory appeal. We construe section 51.014(d) of the Civil Practice and Remedies Code strictly because it provides for an interlocutory appeal, which is an exception to the general rule that only final judgments are appealable. *Gulf Coast Asphalt Co., L.L.C. v. Lloyd*, 457 S.W.3d 539, 545 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Our scope of review in a permissive interlocutory appeal is limited to controlling legal questions on which there are substantial grounds for disagreement and the immediate resolution of which may materially advance the ultimate termination of the litigation. *Id*. at 544; *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d); Tex. R. App. P. 28.3(e); Tex. R. Civ. P. 168. The parties may not add to the trial court's description of the controlling legal question. *Gulf Coast Asphalt Co.*, 457 S.W.3d at 544; *see also White Point Minerals, Inc., v. Swantner*, 464 S.W.3d 884, 890–91 (Tex. App.—Corpus Christi 2015, no pet.) (court of appeals declined to reach additional issue raised by plaintiff given court's limited scope of review in permissive appeals).

We granted the Association's petition for permission to appeal to address one controlling question of law identified by the trial court. We therefore do not address other matters argued in the parties' briefs.

**II. Chapter 33 did not abrogate the rule that defendants are jointly and severally liable when their torts cause an indivisible injury.**

The trial court granted defendants summary judgment on the Association's common-law tort claims based on its holding that the rule of joint and several liability did not survive the enactment of the proportionate (formerly comparative)

5

responsibility scheme of Chapter 33 of the Texas Civil Practice and Remedies Code. In the Kaspar Order, the trial court concluded that "[t]here is no such thing as joint and several liability for negligence or trespass in light of CPRC 33.001, et seq."

We disagree with the trial court's conclusion, which is contrary to decisions of the Supreme Court of Texas. The supreme court recognized the rule of joint and several liability in 1952 in *Landers*, stating that "[w]here the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit." 248 S.W.2d at 734. The plaintiff in *Landers* alleged that the pipelines of two separate defendants broke and poured salt water and oil into the plaintiff's lake, producing an indivisible injury. *Id*. at 731–32. The supreme court held that these allegations were sufficient to assert joint and several liability. *Id*. at 734.

In 1987, the Legislature made substantial changes to Chapter 33 of the Texas Civil Practice and Remedies Code. In negligence and products liability actions to which Chapter 33 applied, the statute required the trier of fact to find the percentage of responsibility with respect to each claimant, defendant, and settling person.[3] The statute also established thresholds for joint and several liability: a defendant was jointly and severally liable for the claimant's damages (reduced by the claimant's own percentage of responsibility) only if that defendant's responsibility exceeded certain percentages and the claimant's responsibility fell below certain percentages.[4]

---

[3] *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 40 (amended) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 33.001).

[4] *See id.* §§ 2.04, 2.08–2.09 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, 33.012–.013).

These thresholds for joint and several liability, as subsequently amended, appear in section 33.013.

Since the 1987 amendments to Chapter 33, the supreme court has twice acknowledged the rule of joint and several liability stated in *Landers*. In *Kramer v. Lewisville Memorial Hospital*, the supreme court explained that "[t]he only exception we have recognized to our longstanding causation principles is where the inextricable combination of joint tortfeasors combines to cause harm in a manner where individual responsibility cannot be fixed." 858 S.W.2d 397, 405 (Tex. 1993) (citing *Landers*, 248 S.W.2d at 734). "In these situations, liability is fastened only after a judicial determination that the claimant's injuries were caused by someone, but proof of that responsibility is impossible." *Id*. at 406.

Next, in *Amstadt v. United States Brass Corp*., 919 S.W.2d 644 (Tex. 1996), the supreme court applied its decision in *Landers* that defendants are jointly and severally liable when their tortious acts cause an indivisible injury. The plaintiff homeowners in *Amstadt* sued multiple defendants who they alleged were jointly responsible for the failure of the plumbing systems in their homes. *Id*. at 647–48. The court of appeals, like the trial court in the present case, concluded that the plaintiffs' failure to show each individual defendant's share of liability defeated their ability to recover damages. The supreme court disagreed:

> Finally, we turn to the issue of comparative liability when the negligence of several defendants causes an indivisible injury. The court of appeals held that for certain plaintiffs . . . , "there is no evidence from which the jury could have allocated the liability as it did between U.S. Brass and Vanguard," and that accordingly, "there was no evidence of causation of damage to the homes and personal property" of those plaintiffs. . . .
>
> If, however, there was evidence that U.S. Brass' negligence was a proximate cause of the plaintiffs' damages, U.S. Brass' responsibility

for that damage did not evaporate if the jury erred in apportioning liability between U.S. Brass and Vanguard. If the injuries arising from the plumbing system could not be apportioned with reasonable certainty, then the plaintiffs' injuries were indivisible, and the defendants are jointly and severally liable for the whole. *See Landers* . . . . We accordingly reverse the court of appeals' take-nothing judgment as to the plaintiffs' negligence claims, and remand those claims to the trial court. At retrial, U.S. Brass will have the burden of apportioning its liability for the plaintiffs' injuries.[5] If U.S. Brass cannot establish its percentage of liability, and thus remains liable for the whole, the trial court should credit U.S. Brass for the amounts the plaintiffs received in settlement from other tortfeasors.

*Id*. at 653–54. Thus, even after the 1987 enactment of Chapter 33's provisions regarding joint and several liability, the supreme court held that if responsibility for the plaintiffs' damages could not be apportioned among the defendants with reasonable certainty, the defendants may be held jointly and severally liable.[6]

Defendants argue, however, that the 1995 and 2003 amendments to Chapter 33 abrogated the supreme court's holdings in *Landers* and *Amstadt* that defendants are jointly and severally liable when their tortious acts cause an indivisible injury. Among other things, defendants cite an analysis of the 1995 bill amending Chapter

---

[5] The supreme court did not cite section 433B(2) of the Restatement (Second) of Torts, but this statement suggests that the court may have been applying that section, which provides:

> Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

Restatement (Second) of Torts § 433B(2) (1963). A dissenting justice in the court of appeals had applied section 433B(2). *See Barrett v. U.S. Brass Corp*., 864 S.W.2d 606, 642 (Tex. App.— Houston [1st Dist.] 1993) (Dunn, J., concurring and dissenting), *rev'd*, 919 S.W.2d 644 (Tex. 1996) (concluding that because there was evidence defendants caused an indivisible injury, the burden shifted to defendants to apportion damages among themselves under section 433B(2)).

[6] This Court has also acknowledged the principle of joint and several liability for an indivisible injury after 1987, though we held that the plaintiff in that case had not suffered an invisible injury. *See Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc*., 879 S.W.2d 89, 101 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (discussing *Landers*).

33 that (1) as part of the background section, references the legal principle that defendants are jointly and severally liable when their tortious acts cause an indivisible injury, and (2) notes statements by opponents of the bill that one justification for joint and several liability is "to cover those cases in which multiple defendants produced only a portion of the harm but where it was impossible for the plaintiff to determine what percentage each of those defendant's caused," and that "joint and several liability should not be altered."[7]

"Of course, statutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended." *Entergy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007). We conclude that the Legislature has not done so here for two reasons.

First, nothing in the text of Chapter 33 indicates that the Legislature intended to abrogate the *Landers* rule of joint and several liability. Section 33.002 presently provides, in relevant part, that Chapter 33 applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a)(1). Similarly, section 33.013 limits joint and several liability based on a defendant's "percentage of responsibility" as "found by the trier of fact." Tex. Civ. Prac. & Rem. Code Ann. § 33.013(a), (b)(1). If responsibility for the plaintiff's injury cannot be apportioned with reasonable certainty among the defendants and other responsible parties (as in *Landers* and *Amstadt*), then by definition the trier of fact cannot find any of them "responsible for a percentage of

---

[7] House Research Organization Bill Analysis, Tex. S.B. 28, 74th Leg., at 2, 8 (May 3, 1995).

the harm," and Chapter 33 does not apply.[8] *See White v. Zhou Pei*, 452 S.W.3d 527, 543–44 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding Chapter 33 inapplicable where there was no finding that defendants were responsible for percentage of harm); *Onyung v. Onyung*, No. 01-10-00519-CV, 2013 WL 3875548, at *11 (Tex. App.—Houston [1st Dist.] July 25, 2013, pet. denied) (mem. op.) (same); *Barnett v. Home of Tex. & Warranty Underwriters Ins. Co.*, Nos. 14-09-01005-CV, 14-10-00197-CV, 2011 WL 665309, at *7 n.11 (Tex. App.—Houston [14th Dist.] Feb. 24, 2011, no pet.) (mem. op.) ("[C]hapter 33 generally governs cases involving 'proportionate responsibility' among liable parties, wherein persons are held responsible for percentages of the harm, and is generally not applicable to cases such as the present one wherein two defendants were held jointly and severally liable for the same damages"); *Tex. Capital Sec., Inc. v. Sandefer*, 108 S.W.3d 923, 925–26 (Tex. App.—Texarkana 2003, pet. denied) ("[Defendants] were held jointly and severally liable; therefore, by its express terms, Chapter 33 is not applicable").

This recognition that Chapter 33 does not supersede a common-law rule of joint and several liability is not unique to the *Landers* rule. As this Court and others have held, "[c]ommon-law joint-and-several-liability rules for partnership, agency, joint venture, and piercing the corporate veil situations survived the enactment of § 33.013 of the Texas Civil Practice and Remedies Code." *Carl J. Battaglia, M.D., P.A. v. Alexander*, 93 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2002), *aff'd in part, rev'd in part on other grounds*, 177 S.W.3d 893 (Tex. 2005); *see also N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 121–22 (Tex. App.—Beaumont 2001, pet. denied).

---

[8] *Kramer* suggests that the question whether proof of individual responsibility is impossible is a legal question for the court to determine. 858 S.W.2d at 405–06; *see also* Restatement (Second) of Torts § 434(1)(b) (1965).

Second, the features of Chapter 33 relevant to this question have remained essentially unchanged since 1987, and the supreme court held in 1996 that joint and several liability was proper when there was no evidence to support the jury's apportionment findings because responsibility could not be apportioned with reasonable certainty. *Amstadt*, 919 S.W.2d at 654. There is no change in the 1995 or 2003 amendments to Chapter 33, nor even a clear statement in the legislative history cited by defendants, that shows the Legislature has abrogated either *Amstadt* or *Landers*.

As explained above, it was the 1987 amendments that established thresholds for joint and several liability in cases where a defendant is found responsible for a percentage of the harm. As relevant here, the 1995 amendments broadened the scope of Chapter 33 from negligence and products liability to include all torts (with some exceptions), and raised the threshold for a defendant's joint and several liability from greater than 10% or 20% responsibility to greater than 50% responsibility in many cases.[9] The 2003 amendments repealed an exception that had set a 20% responsibility threshold for joint and several liability in environmental contamination and toxic tort cases.[10]

In sum, the 1987, 1995, and 2003 versions of Chapter 33 each required percentage findings of responsibility and included thresholds for joint and several liability. Defendants have not explained why the 1987 version of Chapter 33 did not abrogate the *Landers* rule of joint and several liability for an indivisible injury, but the 1995 or 2003 versions did. Nor have we found any support for such a position. Since Chapter 33 was amended in 2003, Texas courts of appeals have continued to

---

[9] *See* Acts 1995, 74th Leg., R.S., ch. 136, § 1, eff. Sept. 1, 1995 (amended) (current version at Tex. Civ. Prac. & Rem. Code §§ 33.002, 33.013).

[10] *See* Acts 2003, 78th Leg., R.S., ch. 204, § 4.07, eff. Sept. 1, 2003 (amended) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 33.013).

recognize that if responsibility for a plaintiff's injury by its nature cannot be apportioned among wrongdoers with reasonable certainty, each defendant is jointly and severally liable under *Amstadt* or *Landers*.[11]

Finally, defendants argue that their position is supported by sections 17 and D18 of the Restatement (Third) of Torts: Apportionment of Liability (2000). They point to commentary accompanying section 17 as indicating that when the independent tortious conduct of multiple persons causes an indivisible injury, each tortfeasor is only jointly and severally liable under Chapter 33 if his or her individual responsibility is greater than 50%. *See id.* § 17 cmt. a & reporter's note.[12]

But the text of section 17 provides that "the law of the applicable jurisdiction determines whether those persons are jointly and severally liable," *id.* § 17, and section D18 addresses the joint and several liability of "each defendant who is assigned a percentage of comparative responsibility" above or below the legal threshold. *Id.* § D18. As explained above, Chapter 33's percentage thresholds for joint and several liability in Texas are inapplicable by their own terms to a situation where responsibility cannot be apportioned among defendants with reasonable

---

[11] *E.g., Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 112 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (quoting *Landers*, 248 S.W.2d at 734); *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 457 (Tex. App.—El Paso 2006, no pet.) ("Joint tortfeasors are defined as parties whose tortious conduct combines as a legal cause of a single and indivisible harm to the injured party") (citing *Landers*); *see also PHI, Inc. v. LeBlanc*, No. 13-14-00097-CV, 2016 WL 747930, at *6 (Tex. App.—Corpus Christi Feb. 25, 2016, pet. denied) (mem. op.) (citing *Amstadt* as "acknowledging that Texas courts usually apply comparative fault analysis unless the defendant who has the burden of apportioning its liability for the plaintiff's injuries cannot establish its percentage of liability, and thus remains liable for the whole"); *Onyung*, 2013 WL 3875548, at *11 (discussing *Amstadt* and *Landers* and holding that because "Mrs. Onyung's injuries are indivisible and cannot be apportioned with reasonable certainty between Yuen and his law firms," Yuen and the firms are jointly and severally liable).

[12] Defendants also argue that the Restatement (Third) rejects the burden-shifting approach of section 433B(2) of the Restatement (Second). To the contrary, the Restatement (Third) preserves that approach with some modifications. *See* Restatement (Third) of Torts: Apportionment of Liability § 26 cmt. h (2000).

certainty. Defendants' position is that "evolving law" on apportionment of liability as reflected in the Restatement does not permit joint and several liability for indivisible injuries unless a defendant is assigned a percentage of responsibility above the threshold.[13] That position does not represent current Texas law. We agree with the Restatement, however, insofar as it indicates that joint and several liability in this situation is determined by applicable Texas law, which—as the supreme court confirmed in *Amstadt*—includes the *Landers* rule.

## CONCLUSION

Both before and after provisions regarding joint and several liability were included in Chapter 33, the Supreme Court of Texas held that where the tortious acts of two or more wrongdoers join to produce an injury that by its nature cannot be apportioned with reasonable certainty among them, all defendants will be held jointly and severally liable for the entire injury. The trial court therefore erred in concluding that this common-law rule of joint and several liability for an indivisible injury did not survive the enactment of Chapter 33, and in granting summary judgment against the Association's common-law tort claims on that basis. We do not address whether the Association's alleged injuries are indeed indivisible such that responsibility for them cannot be apportioned among defendants with reasonable certainty, as that question is outside the scope of this interlocutory appeal.

---

[13] We note that the Restatement (Third) distinguishes between divisibility of damages by causation and apportionment of liability for indivisible damages by responsibility. *See* Restatement (Third) of Torts: Apportionment of Liability § 26 & cmt. a. The Restatement (Third) does not appear to contemplate a situation in which responsibility for indivisible damages cannot be apportioned with reasonable certainty.

We reverse the portions of the trial court's orders granting summary judgment on the Association's claims of common-law nuisance, negligence, and trespass and remand for further proceedings.


/s/     J. Brett Busby
        Justice


Panel consists of Justices Boyce, Busby, and Wise

14