### DUNNING et al. v. BADGER.
### No. 3002.

Court of Civil Appeals of Texas. El Paso.
July 12, 1934.

Rehearing Denied July 30, 1934.

Homa S. Hill and Massingill & Belew, all of Fort Worth, for plaintiffs in error.

P. P. Ballowe and Hughes & Monroe, all of Dallas, for defendant in error.

PELPHREY, Chief Justice.

This suit was filed by defendant in error against plaintiffs in error seeking to recover the sum of $25,000.

He alleged that on or about May 2, 1931, he and plaintiffs in error entered into a verbal contract whereby it was agreed that plaintiffs in error were to furnish $15,000 for the establishment of a tourist camp at some location to be agreed upon later; that defendant in error was to devote his time and efforts to the construction and location of said camp, and was to run and operate it when completed; that plaintiffs in error agreed to pay him a monthly salary of $250 per month and his incidental expenses in doing the necessary and advisable things looking to the establishment of the camp. He further alleged that he devoted all his time and efforts from May 2, 1931, to about August 1, 1931, in making the arrangements and attending to the business of

opening and constructing said tourist camp; that he was to receive a salary of $250 per month and living expenses for managing the camp after it was put in operation, and that when plaintiffs in error had been reimbursed to the extent of their investment, then he was to be an equal one-third owner in the camp and entitled to one-third of the proceeds thereof. He also alleged that he had paid his own hotel bills and traveling expenses during the three months he was working on the project, amounting to $1,000; and that plaintiffs in error had refused to make the investment agreed upon, had failed and refused to reimburse him for his expenses, and to pay him the salary agreed upon, to his damage.

Plaintiffs in error answered by general demurrer, general denial, and a special answer, in which they alleged that they had conferred with defendant in error about a proposition whereby he should negotiate for the acquisition of a hotel or café, and it was suggested that if he should find some such property which would meet their approval they would each invest $7,500 with defendant in error; that it was understood they would not invest to exceed $7,500 each; that instead of negotiating for a hotel or café which would cost $15,000 or less, defendant in error spent, what time he was not drunk, securing plans and specifications for a tourist camp which would cost approximately $40,000.

They further denied having agreed to pay defendant in error any monthly salary prior to the beginning of the operation of the project, and that defendant in error suffered any loss by reason of expenses paid by him.

The issues submitted to the jury and its answers thereto are:

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence that defendant, C. P. Link, on or about the 2d day of May, 1931, agreed to pay plaintiff a salary of $250.00 per month during the time plaintiff would devote his time and efforts to the location of a business project in East Texas? Answer this question 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 2: Do you find and believe from a preponderance of the evidence that the defendant, W. H. Dunning, Jr., on or about the 2d of May, 1931, promised or agreed to pay to the plaintiff a salary of $250.00 per month pending the opening of the East Texas business enterprise in question? Answer this question 'Yes' or 'No.'

"Answer: Yes.

"In the event you have answered either of the foregoing special issues in the affirmative or by 'Yes' then you will answer the following special issue; otherwise you need not answer the same:

"Special Issue No. 3: For what period of time, if any, did the plaintiff, in good faith, devote to the selection and commencement of such business enterprise?

"Let your answer to Special Issue No. 3 state the number of months, weeks or days or whatever period you find, if any you do find.

"Answer: Two and one-half months.

"Special Issue No. 3–A: Do you find and believe from a preponderance of the evidence that the time consumed by the plaintiff, A. H. Badger, in looking for and negotiating for a business project that he has testified about, was a reasonable time? Answer this question 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 4: Do you find and believe from a preponderance of the evidence that the defendant, W. H. Dunning, Jr., authorized C. P. Link and plaintiff to use their own discretion in determining the location and type of enterprise to be established in East Texas? Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 5: Do you find and believe from a preponderance of the evidence that the defendant, C. P. Link, promised and agreed to reimburse the plaintiff for the reasonable and necessary expenses to which plaintiff might be put in negotiating for and locating a suitable business enterprise in question? Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 6: Do you find and believe from a preponderance of the evidence that the defendant, W. H. Dunning, Jr., agreed to reimburse plaintiff for reasonable and necessary expenses which plaintiff should incur during the time plaintiff would be negotiating for the location and opening of the business enterprise in question? Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 7: What do you find and believe from a preponderance of the evidence to be the amount in dollars and cents, if any, of expense and outlay, of which plaintiff was reasonably and necessarily put in conducting negotiations and efforts towards the location and opening of the business enterprise in question? Answer in dollars and cents.

"Answer: $525.00.

"Special Issue No. 8: Do you find from a preponderance of the evidence that W. H. Dunning, Jr., and C. P. Link and A. H. Badger agreed that the said Dunning and Link would not be obligated to finance a project that said Dunning and Link did not approve after the site was found and the proposal determined? Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 9: Do you find from a preponderance of the evidence that the defendants, W. H. Dunning, Jr., and C. P. Link, did not approve the project after the site was found by A. H. Badger, the plaintiff and his plans outlined by him. Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 10: Do you find from a preponderance of the evidence that it was agreed between the plaintiff Badger and the defendants Dunning, Jr., and Link, that the said defendants would not be bound to go into any project proposed by the plaintiff Badger unless said defendants so desired after the details had been worked out and presented to said defendants? Answer 'Yes' or 'No.'

"Answer: No.

"Special Issue No. 11: Do you find from a preponderance of the evidence that it was the agreement between the parties, Badger, Link and Dunning, Jr., that in the event a business project was found satisfactory to all of them that then they would enter into a contract? Answer 'Yes' or 'No.'

"Answer: No.

"Special Issue No. 12: Do you find from a preponderance of the evidence that it was agreed between all the parties hereto that if and when a business project was found which was satisfactory to all parties hereto, that a contract between them was to be reduced to writing? Answer 'Yes' or 'No.'

"Answer: No.

"Special Issue No. 13: Do you find from a preponderance of the evidence that the plaintiff, A. H. Badger, failed to use due diligence in negotiating for the business project in East Texas discussed with Dunning, Jr., and Link? Answer 'Yes' or 'No.'

"Answer: No."

Upon the jury's answers to the above issues the court rendered judgment against the plaintiffs in error, jointly and severally, for $1,150.

The case is now before this court on writ of error.

### Opinion.

Plaintiffs in error have briefed 16 of their assignments of error and attack the judgment on the ground that the court committed error in submitting issues Nos. 1, 2, 3, 3–A, 6, and 7; that the answers to issues Nos. 1, 2, 3, 4, 5, 6, and 7 are not supported by the evidence; and that the court erred in the admission of certain evidence.

They contend that special issues Nos. 1 and 2 were not raised by the pleadings or the evidence; that they were each charges on the weight of the evidence, in that they assumed that defendant in error devoted time and efforts to the location of a business project in East Texas, and that the date of the agreement inquired about was May 2, 1931.

■ Defendant in error's pleading was as follows: "Plaintiff will show that heretofore on or about the 2d day of May, 1931, the defendants entered into a verbal contract and agreement with plaintiff whereby it was mutually understood and agreed between them that the defendants were to furnish the money in an amount not exceeding Fifteen Thousand ($15,000.00) Dollars, for the purpose of erecting and establishing at a location to be thereafter agreed upon in East Texas a tourist camp, and that the plaintiff was to devote his time, efforts and attention not only to the details of constructing and locating said tourist camp but was to run and operate said tourist camp when it should be completed and that defendants agreed with plaintiff that if he would proceed at once with the necessary inspections and negotiations looking to the establishment of said tourist camp that they would pay him a monthly salary of Two Hundred Fifty ($250.00) Dollars per month and would pay all of his incidental expenses in doing such things as were necessary or advisable looking to the establishment of said camp. * * * that defendants have breached said contract and undertaking with plaintiff, have refused to pay plaintiff his salary. * * * Plaintiff will show that defendant's failure to pay his salary has damaged him in the sum of Seven Hundred Fifty ($750.-00) Dollars. * * *"

This pleading certainly raised an issue as to whether plaintiffs in error agreed to pay defendant in error a salary of $250 per month during the time he would devote his time and efforts to the location of a business in East Texas and pending the opening of such business as was submitted in issues 1 and 2.

■ Relative to the question of salary defendant in error testified:

"The agreement was that I was to receive a salary. Mr. Link suggested a salary of $300.00 a month—$250.00 a month, because they thought it was a good proposition, and it was arranged that I would go down there at $250.00 a month. He said 'you can live on that.' Well, I said 'I will live on it.' Mr. Dunning said 'anything that Charlie and myself agree on will be agreeable to me.' * * *

"Q. Was there any discussion at that time with reference to your financial ability to handle the transaction? A. Yes, sir.

"Q. Was that discussion still while Dunning was present? A. Yes, sir, because they knew I would have no money to start with.

"Q. Was there any discussion at that time, while Mr. Dunning was present as to 'what compensation you were to receive? A. Not with Mr. Dunning. * * *

"Q. Now was there any transaction between you and Mr. Link with reference to the way you were to be paid, and how the thing was to be handled; what you were to receive? A. I was to receive a salary of $250.00 a month for myself and wife and boy to live on, and my meals at the hotel."

Plaintiffs in error both denied any agreement to pay a salary prior to the commencement of operations, but the evidence above quoted is sufficient, we think, to justify the submission of the issues and to support the findings of the jury thereon.

■ We cannot agree that the evidence that "anything Charlie and myself agreed on will be agreeable to me" was incompetent because there was no pleading to support it, and it was not an effort to make Link the agent of Dunning in the matter. It clearly evidences a willingness on Dunning's part to pay defendant in error a salary in such amount as he and Link might agree on.

■ The record shows only one meeting of all the parties, and that at such meeting an agreement was entered into between them. There is no contention made that different agreements were entered into at different times. The whole controversy is as to what the agreement was which was entered into at the meeting to which they all refer.

Therefore, the fixing of the date in the issues as being on or about May 2d, could not cause the jury to answer the issues any differently than they would have if such date had not been mentioned. If there was any error it was immaterial.

■ We do not agree with plaintiffs in error that the court in submitting issues Nos. 1 and 2, as he did, assumed that defendant in error had spent time and effort in the location of a business project in East Texas.

The reference as to the time and effort spent in the location of the business project in East Texas was necessary to the issue in order for the jury to determine whether the agreement, as testified to by defendant in error, was entered into by the parties.

■ Plaintiffs in error objected to the submission of special issue No. 3, on the ground that it was duplicitous; that it was on the weight of the evidence, in that it assumed that some period of time was devoted by defendant in error to the selection and commencement of the business enterprise; and that the court should have defined the term "good faith."

The issue was not duplicitous, nor was it on the weight of the evidence.

■ The term "good faith," as used in this issue; the term "reasonable time," as used in issue 3–A; and the term "reasonable and necessary," as used in issues 6 and 7, are all ordinary terms whose meaning is presumed to be understood by men of ordinary intelligence, and call for no defining. Speer's Special Issues, § 57, p. 67.

■ It is further charged that the submission of issue 3–A was erroneous, in that it assumed that there was time consumed by defendant in error in looking for and negotiating for and arranging for the business project that he testified about.

Plaintiffs in error in their testimony do not deny that he did consume some time on the matter, and plaintiff in error's (Link's) testimony shows clearly that he and defendant in error spent time in both Tyler and Overton looking for a suitable location.

There being no dispute in the evidence, there certainly was no harm resulted to plaintiffs in error from the fact that the court assumed the existence of such fact.

■ The fact, as shown by the bill of exceptions, that this issue was brought into court by plaintiffs in error, along with others, would not preclude them from now objecting to its submission; there being no statement of the court to show a request for its submission by them.

The court further certified that he was not clear about their reserving a right to later object thereto in writing.

■ Issue No. 6 was as to the agreement relative to the expenses incurred by defendant

in error, and is not subject to the objections urged to it.

■ Issue No. 7 is not duplicitous.

■ The testimony of defendant in error is, and the jury found, that each of the plaintiffs in error promised to pay him the salary and certain expenses to further the joint enterprise in which they were interested. Under such a state of facts they would each be liable to him for the full amount, and consequently there was no error in rendering a joint and several judgment against them.

We have considered the remaining assignments, and, without extending this opinion to a greater length, we are of the opinion that they are without merit and should be overruled.

The judgment of the trial court is affirmed.